## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHRISTOPHER NADEL,                              Case No. 1:15-cv-447
    Plaintiff,                              Litkovitz, M.J.


    vs.


TIME WARNER CABLE LLC,                          **ORDER**
    Defendant.


This matter is before the Court on defendant's "Motion for Summary Judgment or, in the alternative, Summary Adjudication and Memorandum in Support" (Doc. 30), plaintiff's response in opposition to the motion (Doc. 33),[1] and defendant's reply memorandum (Doc. 35).

## I. Background

Plaintiff Christopher D. Nadel, proceeding pro se, instituted this action against defendant Time Warner Cable LLC (TWC) in July 2015.[2] Plaintiff filed an amended complaint on July 27, 2015, alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. (Title VII). (Doc. 4). Plaintiff alleges retaliation and discrimination on the basis of his race, age, gender, color and religion.

Plaintiff makes the following allegations in the complaint: TWC placed plaintiff in a position as a retail sales representative in one of its retail stores. (*Id*. at 2). In that job position,

---

[1] Plaintiff filed a second response in opposition on August 22, 2016. (Doc. 34). The Court has not considered the second filing because (1) it appears to be duplicative of plaintiff's first opposing memorandum, and (2) plaintiff did not obtain leave of Court before filing a supplemental memorandum as required under the Local Rules of this Court. *See* S.D. Ohio Civ. R. 7.2(a)(2) ("No additional memoranda beyond those enumerated [a motion with supporting memorandum, a memorandum in opposition, and a reply memorandum] are permitted except upon leave of court for good cause shown.").

[2] Defendant Time Warner Cable LLC states it is not a proper defendant and that the proper defendant is TWC Administration LLC. (Doc. 30 at 1, n.1).

he endured "harassment by management, retaliation, discrimination, disease, and tons of stress."
(*Id*. at 2-3).  Plaintiff was "harassed mentally [and] physical[ly] for bringing tax, fraud, extortion
[and] identity theft issues to management's attention," and he "was given certain jobs which
made [him] sick." (*Id*. at 3).  "[M]anagement" discriminated against him based on his "race, age,
gender, color [and] religion." (*Id*.).  Plaintiff was threatened with physical violence and
retaliated against. (*Id*.).  Plaintiff's "name was slandered when [he] tried to pursue" [sic] and he
was "fired for lies." (*Id*.).

Plaintiff has attached an unsigned and unsworn Equal Employment Opportunity
Commission (EEOC) charge to the complaint. (*Id*. at 7-8).  An EEOC "Dismissal and Notice of
Rights" on the charge dated June 11, 2014, is also attached to the complaint. (*Id*. at 5).

## II. Defendant's summary judgment motion

Defendant TWC moves for summary judgment on plaintiff's claims on the following
grounds: (1) plaintiff did not exhaust his administrative remedies by timely filing an
administrative charge with the EEOC as required in order to pursue his claims in federal court;
(2) plaintiff did not disclose a claim against TWC during the course of bankruptcy proceedings
he instituted and he is therefore judicially estopped from pursuing the claims he brings against
TWC in federal court; and (3) even if plaintiff's claims were properly before this Court, they fail
as a matter of law on the merits. (Doc. 30).  Defendant contends that plaintiff is unable to
establish a prima facie case of retaliation or discrimination on any of the grounds he asserts. (*Id*.
at 17-19, 20-23).  Defendant further alleges that it has articulated a legitimate nondiscriminatory
and non-retaliatory reason for plaintiff's termination – plaintiff's violation of TWC's Major
Work Rule #30, which requires an employee to report if he is charged with or convicted of a

criminal offense, including a traffic offense – and plaintiff has not introduced evidence to show the articulated reason is pretextual. (*Id*. at 19-20, 23).

Plaintiff's arguments in opposition to defendant's motion are difficult to decipher, but as best the Court is able to discern plaintiff alleges he exhausted his administrative remedies as demonstrated by the "Notice of Rights" letter he received from the EEOC. (Doc. 33). Plaintiff appears to allege that to the extent he did not complete the necessary administrative steps in the usual order, his omissions resulted from his dire financial circumstances caused by the loss of his job and other extenuating circumstances. (*Id*. at 3). Plaintiff further asserts that he filed for bankruptcy well before his claims for discrimination and retaliation arose; he had no physical estate and no intention of filing suit; and he "followed all steps required by law" that were provided to him. (*Id*. at 4-5). Plaintiff also contends he can prevail on the merits of his claims because he was a "stellar employee" who was wrongly reprimanded for using TWC's "open door policy" to alert his employer of "[i]nsubordinate[,] dangerous and very disrespectful so called leaders"; there is no evidence that plaintiff failed to perform his job duties or to meet TWC's expectations; he did not have any documented "Write Ups"; and there is documentation showing that he was required "to do more than any other employees" in the retail store, which is evidence of intentional discrimination and retaliation. (*Id*. at 5-6).

## III. Undisputed facts

Plaintiff began working as a Retail Sales Specialist for TWC on or about January 25, 2013. (Doc. 30-1, Tina Andrews Decl., ¶ 3). Plaintiff's job duties included traveling to other TWC locations to provide coverage and performing other customer care center/store duties as assigned to him. (Doc. 30-1, Andrews Decl., Exh. A; Doc. 30-14, Mario Stuckey Decl., ¶ 3).

3

Plaintiff's job required that he hold a valid driver's license and maintain a clean driving record. (Doc. 30-1, Andrews Decl., Exh. A).

In August 2013, plaintiff was involved in a workplace confrontation with Lead Retail Sales Specialist Jennifer Fehr. (Doc. 30-1, Andrews Decl., ¶ 8). Human Resources Manager Tina Andrews conducted an investigation, following which plaintiff was issued a final written warning for insubordination and negative unprofessional behavior with co-workers and leadership and Fehr received coaching from Andrews and Fehr's supervisor, Mario Stuckey (Supervisor, Retail Sales). (*Id.*, ¶¶ 1, 9, 10; Exhs. B, C; Doc. 30-14, Stuckey Decl., ¶¶ 1, 6; *see also* Doc. 30-1, Andrews Decl., Exh. F).

TWC Major Work Rule #30 requires employees to promptly notify their department head if they are "charged with, indicted for or convicted of a criminal offense (including misdemeanors and traffic violations)." (Doc. 30-1, Andrews Decl., ¶ 20; Exh. H; Doc. 30-14, Stuckey Decl., ¶ 10). On April 3, 2014, plaintiff informed Stuckey via email that he had been detained by the police and he provided Stuckey with a copy of a summons for a court appearance on April 28, 2014. (Doc. 30-14, Stuckey Decl., ¶ 7; Doc. 30-1, Andrews Decl., Exh. L). Stuckey forwarded the email to Andrews, who asked Stuckey and Chris Murray, Manager Retail Sales, to arrange a time for Andrews to meet with plaintiff about the matter. (Doc. 30-14, Stuckey Decl., ¶ 7; Doc. 30-1, Andrews Decl., ¶ 15).

On April 3 and 4, 2014, Andrews conducted a public records search and asked the TWC Security Department to perform a standard background check of plaintiff. (Doc. 30-1, Andrews Decl., ¶ 16). Andrews discovered that plaintiff had been "charged with or convicted of numerous offenses (including traffic violations)" between August 2012 and October 2013 which he had failed to report to TWC, including driving with a suspended license. (*Id.*).

4

Plaintiff was off work April 4 through April 9, and Andrews was unable to reach him by phone during this period. (Doc. 30-1, Andrews Decl., ¶ 17). Stuckey reached plaintiff by phone on April 9, 2014, and both he and Andrews spoke to plaintiff about his email to Stuckey and the summons he had received. (*Id.*; Doc. 30-14, Stuckey Decl., ¶ 9). Andrews asked plaintiff to provide a written statement about the underlying ticket, which plaintiff did not do. (*Id.*).

In April 2014, plaintiff submitted a complaint to TWC's Employee Relations alleging he had been retaliated against for reporting the 2013 incident involving Fehr. (Doc. 30-1, Andrews Decl., ¶ 11). At some point plaintiff also sent an email to TWC's Director of Human Resources, Carol Walker, indicating that TWC was discriminating against him due to his religion and race. (Doc. 30-1, Andrew Decl., Exh. F- "5/14/2014 Nadel Confidential Detailed Investigation Summary," p. 3).[3] Michelle Urchek, a manager in TWC's Employee Relations Department in Charlotte, North Carolina, investigated plaintiff's complaint. (Doc. 30-1, Andrews Decl., ¶ 11; Exh. F). As part of her investigation, Urchek interviewed plaintiff. (*Id.*, Exhs. E, F). After the interview, Urchek sent a memo to plaintiff to confirm the issues and concerns he had raised in the April 14, 2014 interview. (*Id.*, Exh. E). Urchek wrote that plaintiff alleged that he was being retaliated against for reporting an incident that occurred with Fehr that involved her yelling at plaintiff and threatening him with violence, but it was plaintiff who was issued corrective action. (*Id.*). Urchek noted that plaintiff alleged he had been treated differently since the incident; specifically, plaintiff alleged that Fehr claimed she did not receive vacation requests plaintiff

---

[3] This portion of the investigation summary states: "It is important to note that Nadel made statements regarding discrimination due to his religion and race in an e-mail to HR Director, Carol Walker, which originally prompted Employee Relations to investigate Nadel's concerns. In this e-mail, one of Nadel's claims was that Fehr was discriminating against him 'due to what was told to upper management about the conversation that she overheard about religion and what beliefs I have for my race.' When Urchek asked Nadel to explain, Nadel stated that he was talking to his wife about what church to go to while he was on break outside and he assumed that Fehr overheard him. He stated that Fehr did not make any comments that led him to believe she was being discriminatory nor was he sure that she had heard his conversation with his wife." (Doc. 30-1, Andrews Decl., Exh. F, p. 3).

emailed to her; Fehr gave plaintiff the wrong work schedule and would not assist him with questions; plaintiff was told he was "not a good fit" for another role within the company, which had hindered his ability to transfer into a different role; he was not provided training he requested; and he was told he would be terminated if he discussed the Fehr incident with other employees. (*Id*.). Plaintiff confirmed by an email to Urchek dated April 18, 2014, that the letter accurately reflected his concerns. (*Id*., Exh D). Plaintiff made no mention of discrimination based on his race or religion, even though these were the concerns that had prompted the initial investigation. (*See id*., Exh. F, p. 3).

Urchek concluded as a result of her investigation that there was no evidence to support plaintiff's allegation of retaliation for reporting the Fehr confrontation. (*Id*., Exh. F). Urchek wrote plaintiff a letter dated May 14, 2014, informing him that the investigation had concluded and advising him of the findings on the concerns he had raised as outlined in the memo she had sent him in April. (*Id*., Exh. G). Urchek wrote that she found no evidence that Fehr had threatened plaintiff with physical violence; that Fehr had treated plaintiff differently by losing his vacation requests, not informing him of schedule changes, and not assisting him; that a statement by Murray had hindered plaintiff's ability to transfer to a new role; and although plaintiff had been asked to keep information confidential during the initial investigation of the 2013 incident, there was no evidence that he had been threatened with termination if he discussed the incident with other employees. (*Id*.). The investigation report concluded that there was no evidence to support a finding that Fehr or any other member of management was treating plaintiff differently than other employees. (*Id*., Exh. F).

Andrews conducted an additional records search on May 19, 2014, and learned that plaintiff had failed to appear in court on April 28, 2014, in compliance with the summons that

6

had been issued, resulting in issuance of a warrant.  (Doc. 30-1, Andrews Decl., ¶ 19).  Plaintiff, who had been on leave since April under the Family and Medical Leave Act, subsequently returned to work on July 1, 2014.  (Doc. 30-1, Andrews Decl., ¶ 18).  TWC terminated plaintiff on July 11, 2014, for the stated reason that plaintiff had violated Major Work Rule # 30.  (*Id.*, ¶ 21; Exh. J).

The evidence of record includes documents from plaintiff's EEOC file, including the EEOC case log for his charge.  (Doc. 30-15, J. Scott Carr Decl., Exh. 2).  The documentation shows that plaintiff completed an EEOC Intake Questionnaire, which he signed and dated April 4, 2004.  (*Id.* at 20-23).  Plaintiff checked a box indicating he wanted to file a charge of discrimination and authorizing the EEOC to "look into" the discrimination he described in the questionnaire.  (*Id.* at 23).  Plaintiff's signature on the form is not sworn or verified.  (*Id.*).  The EEOC sent plaintiff a letter dated April 8, 2014, advising him that a "Charge of Discrimination" had been drafted as a result of the information he had provided and enclosing the charge form with a return envelope.  (*Id.* at 24).  The EEOC advised plaintiff that he should review the charge, sign and date it, and return the signed and dated charge to the EEOC to facilitate the proper handling of the charge.  (*Id.*).  The EEOC advised plaintiff:

> WE ARE UNABLE TO INVESTIGATE FURTHER WITHOUT A SIGNED CHARGE FORM.  A DETERMINATION WILL BE MADE BASED ON THE EVIDENCE CURRENTLY IN THE FILE.  YOUR CHARGE WILL BE DISMISSED WITHIN **33 DAYS** OF THE DATE OF THIS LETTER IF WE DO NOT RECEIVE YOUR SIGNED CHARGE FORM.

(*Id.*).

On the charge form completed by the EEOC,[4] boxes for retaliation and for discrimination based on race, color, sex and religion are checked.  (*Id.* at 14-15).  The form indicates that the latest act of discrimination occurred on April 4, 2014.  (*Id.*).  The charge sets forth the following

---

[4] A copy of the unsigned and undated EEOC charge is also attached to the complaint.  (Doc. 4 at 7-8).

allegations: Plaintiff is bi-racial and Jewish. In July or early August 2013, after plaintiff was transferred to a new department, his manager Fehr stated that plaintiff could not be Jewish because he is African-American. Plaintiff was offended by the remark and "voiced [his] opposition" to it. He was treated differently by Fehr and held to different standards than his co-workers. Fehr threatened plaintiff with physical violence in October 2013. Plaintiff complained to Murray and Stuckey. In retaliation, Fehr refused to train plaintiff on new products; constantly changed his schedule without prior notice so it would appear he was either late to work or extremely early; and talked disparagingly about plaintiff within earshot of his coworkers. Plaintiff's vacation requests were denied but those of other employees in the department were not; his paperwork constantly came up missing; he was sent home by Murray when he attempted to return from a month-long short-term disability leave in March 2014 which he had taken due to stress from alleged retaliation; and he was not paid for his leave despite having accrued time off to cover part of it. Plaintiff complained to Human Resources about sexual jokes and remarks made by a coworker on a daily basis, which Fehr also heard. Management had not addressed his complaints. Plaintiff believed he had been discriminated against due to his race and religion and retaliated against for his complaints in violation of the anti-discrimination laws. (*Id*. at 14-15).

The EEOC sent a Notice of Charge of Discrimination to defendant on May 7, 2014, advising TWC that plaintiff had filed a discrimination charge against it and that no action by defendant was required at that time. (Doc. 30-1, Andrews Decl., ¶ 24; Exh. K). The unsigned charge was attached to the Notice. (*Id*.). The case log includes a notation dated June 9, 2014, indicating that plaintiff failed to return the signed charge form within 33 days. (Doc. 30-17, Carr Decl., Exh. 2, p. 9). The EEOC closed its file on plaintiff's charge and issued a Dismissal and

Notice of Rights on June 11, 2014.  (*Id*., p. 7).  The EEOC sent the notice to TWC on that same date.  (Doc. 30-1, Andrews Decl., ¶ 25; Exh. L).

## IV. Summary judgment standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action.  The court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)).  The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.  *Id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Id*. (citing *Cities Serv.*, 391 U.S. at 288-289).  If the evidence is merely colorable, *Dombrowski v. Eastland*, 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted.  *Anderson*, 477 U.S. at 249-50.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd.  v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citation omitted).

## V.  Exhaustion of administrative remedies

Defendant alleges that plaintiff failed to exhaust his administrative remedies because he did not timely file an administrative charge with the EEOC before filing his action in federal court.  Defendant alleges that plaintiff instead submitted an unsworn questionnaire to the EEOC and never signed the charge that the EEOC prepared for him.  (Doc. 30 at 1; *see* Doc 30-15, Carr. Decl., Exh. 2, pp. 9, 20-23).  Defendant contends that plaintiff refused to verify the charge and he affirmatively told the EEOC that he did not want to file a charge, and the EEOC closed plaintiff's file for lack of "reasonable cause" following multiple unsuccessful attempts to contact plaintiff.  (*Id.*, pp. 9, 10).  Plaintiff denies that he told the EEOC that he did not want to file a charge and he asserts that the statement in the EEOC case log to the contrary is "pure speculation and hearsay."  (Doc. 33 at 3).  Plaintiff alleges that he completed the entire administrative process as evidenced by the fact that the EEOC issued a determination on his charge and a "Right to Sue" letter.  (*Id.*).

Exhaustion of administrative remedies is a precondition to filing a Title VII lawsuit.[5] *Lockett v. Potter*, 259 F. App'x 784, 786 (6th Cir. 2008) (citing *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002); *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991)).  As a general rule, a plaintiff must first file a timely charge with the EEOC before pursuing an employment discrimination action under Title VII.  *Younis v. Pinnacle Airlines, Inc.,* 610 F.3d

---

[5] A claimant must also exhaust his administrative remedies as a precondition to filing an age discrimination claim under the Age Discrimination in Employment Act (ADEA).  *Hoover v. Timken*, 30 F. App'x 511, 512-13 (6th Cir. 2002); 29 U.S.C. § 626(d).

359, 361 (6th Cir. 2010). *See also Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989) (to bring a Title VII action in federal court, a plaintiff must (1) timely file a charge of employment discrimination with the EEOC, and (2) receive and act upon the EEOC's right-to-sue letter) (citing 42 U.S.C. § 2000e-5(f)(1) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973)). The EEOC charge "shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e-5(b). The EEOC regulations require that "[a] charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. To be "verified" means to be "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury." *Sorrell v. Home Depot U.S.A., Inc.*, No. 00-1188, 2002 WL 1397244, at *1 (W.D. Tenn. Jan. 2, 2002) (citing 29 C.F.R. § 1601.3(a)). The EEOC charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Id. See also* 29 C.F.R. § 1601.12(b); *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 508 (6th Cir. 2011). Accordingly, Title VII plaintiffs cannot bring claims in a lawsuit that were not included in the EEOC charge. *Younis,* 610 F.3d at 361 (citing 42 U.S.C. § 2000e-5(f)(1); *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47 (1974)). This general rule serves two purposes: (1) it gives the employer information concerning the conduct about which the employee complains, and (2) it affords the EEOC and the employer an opportunity to settle the dispute. *Id.* at 361-62 (citing *Alexander*, 415 U.S. at 44).

Because aggrieved employees acting on their own behalf, rather than attorneys, usually file charges with the EEOC, their pro se charges are construed liberally. *Younis,* 610 F.3d at 362. the Court may consider claims that are "reasonably related to or grow out of the factual

allegations in the EEOC charge." *Id.* (citing *Randolph v. Ohio Dep't of Youth Servs.,* 453 F.3d 724, 732 (6th Cir. 2006)).  Pursuant to this rule, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Id*. (quoting *Davis v. Sodexho, Cumberland Coll. Cafeteria,* 157 F.3d 460, 463 (6th Cir. 1998)).

Here, defendant argues that the intake questionnaire submitted by plaintiff does not satisfy the requirement of 42 U.S.C. § 2000e-5(b) that a charge "shall be in writing under oath or affirmation[.]"  (Doc. 30 at 13, citing § 2000e-5(b)).  Courts, including several district courts in the Sixth Circuit, have addressed the question of whether an individual may satisfy this requirement of the statute by submitting a written questionnaire to the EEOC. *See, e.g., Woods v. FacilitySource LLC,* No. 2:13-cv-621, 2015 WL 247980 (S.D. Ohio Jan. 20, 2015); *Dimas v. Michigan Dept. of Civil Rights*, No. 4:02-cv-178, 2004 WL 1397558, at *6 (W.D. Mich. Mar. 19, 2004); *Sorrell*, 2002 WL 1397244.  In *Woods*, the Court acknowledged that "a questionnaire alone will not constitute the filing of a charge if it does not satisfy § 2000e-5(b)'s requirements of a 'writing under oath or affirmation' and notice to the employer of the claim being alleged." *Woods*, 2015 WL 247980, at *5 (citations omitted).  The Court found that these requirements were satisfied in the case before it where both plaintiffs signed and filed intake questionnaires with the EEOC that gave the required notice, and the questionnaires were accompanied by signed, verified letters (i.e., "declaring under penalty of perjury that the letters were true and correct") that provided more details of the alleged discrimination, identified the plaintiffs' legal counsel, and requested that "the EEOC treat the questionnaires and letters as charges of discrimination." *Woods*, 2015 WL 247980, at *4-5.  In addition, the EEOC subsequently sent plaintiffs letters (1) informing them that it was treating the documentation as a charge and that it

12

had notified the employer that the plaintiffs had filed a charge, (2) providing the plaintiffs with the EEOC charge numbers it had assigned, and (3) advising the plaintiffs that it would begin the investigation. *Id*., at \*4. The EEOC attached to the letters charge forms it had completed based upon the information the plaintiffs had provided which the EEOC asked the plaintiffs to sign and return, although there was no evidence that the plaintiffs had done so. *Id*. The EEOC subsequently issued right-to-sue letters to the plaintiffs. *Id*. The Court found that the plaintiffs' situation was "well within the body of case law finding that the charge requirement is met by a questionnaire and accompanying materials when together they satisfy all of the legally-required elements of a charge." *Id*., at \*5 (citations omitted). The Court concluded that the fact plaintiffs did not sign the charge forms the EEOC sent them did not change its conclusion because plaintiffs had verified earlier submissions to the EEOC. *Id*. (citing *Wilkerson v. Grinnell Corp*., 270 F.3d 1314, 1317 (11th Cir. 2001) (signed declaration at the end of intake questionnaire that, "I swear or affirm under penalty of perjury that the provided information is truthful and correct to the best of my knowledge. . . ." satisfied the verification requirements of Title VII and the EEOC regulations)).

In *Dimas*, 2004 WL 1397558, the plaintiff argued that he timely filed his lawsuit based on an EEOC intake questionnaire he had completed prior to filing a charge of discrimination with the EEOC. *Id.*, at \*4. The Court noted that other courts have reached varying results on the question of whether an intake questionnaire can suffice as a charge of discrimination. *Id*., at \*4-5 (collecting cases). The Court concluded that the intake questionnaire the plaintiff had completed in the case before it sufficed as a charge because the questionnaire contained all of the information required to be set forth in a charge, including the plaintiff and the employer's name and address, the basis of the alleged discrimination, and a factual statement describing the

allegedly discriminatory action. *Id*., at *6; *see* 29 C.F.R. § 1601.12(a)(1)-(5). Although it was unclear whether the plaintiff had actually signed the questionnaire, the Court found this fact to be irrelevant because the plaintiff subsequently filed a formal charge that cured any defects in the questionnaire as permitted under 29 C.F.R. § 1601.12(b) and the EEOC case log disclosed that the EEOC assigned a case number based upon the questionnaire; the EEOC sent a package of documents to the plaintiff's employer before the plaintiff filed the formal charge; and the EEOC indicated in a letter to the plaintiff that a charge had been filed. *Id*. The Court therefore concluded based on the information in the intake questionnaire and the facts surrounding the plaintiff's completion of it that plaintiff had timely filed a charge. *Id*.

In *Sorrell*, 2002 WL 1397244, the Court found that an unsigned EEOC charge form that had been completed by an EEOC representative but was never signed by the plaintiff, together with a proposed revised statement of the plaintiff's factual allegations bearing the plaintiff's signature but no acknowledgement that the statement was made under oath or affirmation or that it was declared under penalty of perjury, were insufficient to constitute a verified charge filed with the EEOC. *Id*., at *2-3. The Court noted that the proposed revision was a request for a change to be made to the charge form and for the new amended charge form to be returned to the plaintiff for her signature, and the evidence showed that the signature on the request was not intended to be a signature on the charge form. *Id*. The Court concluded that because the plaintiff had not filed a verified charge with the EEOC, she could not pursue her Title VII claim against the defendant. *Id*.

Consistent with the decisions by the various courts in this Circuit, this Court finds that plaintiff did not exhaust his administrative remedies prior to filing this lawsuit as required by the governing statute and regulations. The evidence shows that the EEOC drafted a charge for

14

plaintiff to sign that included required information, including plaintiff and the employer's name and address, the basis of the alleged discrimination, and a factual statement describing the allegedly discriminatory action as required under 29 C.F.R. § 1601.12(a). (*See* Doc. 30-15, Carr Decl., Exh. 2, pp. 14-15). The EEOC also assigned a charge number to plaintiff's claim and gave TWC notice of the charge. (*Id.*; Doc. 30-1, Andrews Decl., ¶ 24; Exh. K). According to the EEOC case log, the EEOC had several exchanges with plaintiff regarding filing a charge. (Doc. 30-15, Carr Decl., Exh. 2, p. 9). However, at no time did plaintiff submit a signed *and verified* questionnaire or charge to the EEOC, and neither did he submit a subsequent charge that cured the defects in the intake questionnaire. When plaintiff failed to return a "signed charge" after more than 33 days, the EEOC closed its file on plaintiff's charge and issued a Notice of Right to Sue on June 11, 2014. (*Id.*; *see also* Exh. 2, p. 7). A signed EEOC memorandum dated June 10, 2014, regarding plaintiff's charge indicates the file was closed for "Not Reasonable Cause" and states: "It has been more than 33 days since a Charge was sent to [Charging Party] for signature and it has not been returned. Multiple attempts have been made to ascertain [Charging Party's] intent to pursue this Charge." (*Id.*, p. 10). There is no evidence that the EEOC ever pursued an investigation into a charge filed by plaintiff or notified TWC of an investigation. Rather, on June 11, 2014, the same date the EEOC issued its "Dismissal and Notice of Rights," the EEOC sent TWC a Notice of Charge of Discrimination indicating that no action was required by TWC at that time. (*Id.*, p. 12). Plaintiff's failure to submit a signed and sworn declaration to the EEOC at any time during the course of the administrative proceedings distinguishes this case from *Woods,* 2015 WL 247980, and *Dimas,* 2004 WL 1397558. The facts of this case are instead akin to those in *Sorrell*, 2002 WL 1397244, where the plaintiff failed to sign an EEOC charge or any type of statement that he acknowledged was made under oath or

15

affirmation or under penalty of perjury. Plaintiff Nadel did not respond to the EEOC's requests that he submit a signed charge if he wished to pursue his complaint. Plaintiff therefore did not give the EEOC an opportunity to investigate his charge and pursue conciliation efforts with his employer. *Younis,* 610 F.3d at 361-62. Because plaintiff failed to exhaust his administrative remedies by filing a verified charge or a charge and a sworn statement with the EEOC, he is precluded from pursuing his Title VII claims in this Court.

## VI. Resolution of plaintiff's claims on the merits

### A. Plaintiff's claims of discrimination based on age, race, color, and religion

Assuming for summary judgment purposes that plaintiff exhausted his discrimination and retaliation claims, defendant TWC is nonetheless entitled to summary judgment on the merits of plaintiff's claims. Plaintiff alleges in the amended complaint that he was discriminated against based on his age, race, color, and religion.[6] (Doc. 4 at 3). To prove a discrimination claim under Title VII on these grounds, plaintiff must offer "direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment."[7] *Johnson v. Kroger Co.,* 319 F.3d 858, 864-65 (6th Cir. 2003). When a plaintiff alleges disparate treatment based on circumstantial evidence, his claim is analyzed under the *McDonnell Douglas* burden-shifting analysis. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973). Plaintiff may establish a prima facie case of discrimination through circumstantial evidence by showing that: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position lost; and 4) he was replaced by an individual outside

---

[6] Plaintiff also alleges discrimination based on his gender, but the gender discrimination claim appears to be limited to a claim of sexual harassment. The Court will address that claim separately.

[7] Age discrimination is barred under the ADEA, 29 U.S.C. § 621, *et seq.* Cases arising under the ADEA are analyzed under the same three-stage framework applicable to a Title VII claim. *Grosjean v. First Energy Corp.,* 349 F.3d 332, 335 (2003).

the protected class. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Plaintiff may also establish the fourth prong of a prima facie case of discrimination by showing that he was treated less favorably than a similarly-situated individual outside the protected class. *See Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002). The fourth prong is modified for an age discrimination claim to require replacement by a "substantially" or "significantly" younger person, which may include an individual within the protected class. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312-313 (1996); *Grosjean*, 349 F.3d at 335.

If the plaintiff establishes a prima facie case, the defendant must then offer some legitimate, nondiscriminatory explanation for its employment decision. *McDonnell Douglas Corp.,* 411 U.S. at 802. If the defendant produces such an explanation, the plaintiff must show that the proffered reason was a pretext for unlawful discrimination. *Id.* at 804; *Chen v. Dow Chem. Co.,* 580 F.3d 394, 400 (6th Cir. 2009). That is, he must point to sufficient evidence that could lead a reasonable jury to reject the defendant's proffered explanations. *Chen*, 580 F.3d at 400 (citations omitted). "Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392 (6th Cir. 2008) (citing *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)).

"[B]ecause a prima facie case [of discrimination] and sufficient evidence to reject the employer's explanation may permit a finding of liability . . . a plaintiff [need not] always introduce additional, independent evidence of discrimination" to survive summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 149 (2000). Nonetheless, there are also "instances where, although the plaintiff has established a prima facie case and set forth

17

sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.* at 148.

Plaintiff has not come forward with competent evidence to create a genuine issue of material fact on his prima facie case of discrimination based on his age.[8]  Plaintiff has not made any allegations or produced any evidence to show that he is a member of the protected group under the ADEA, which protects workers at least 40 years of age. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008).  Plaintiff listed his date of birth as 1983 in the EEOC Intake Questionnaire, which indicates he does not fall within the protected class.  (Doc. 30-15, Carr Decl., Exh. 2, p. 20).  Moreover, plaintiff has not made any allegations or submitted any evidence related to discrimination based on his age.  Defendant is therefore entitled to summary judgment on plaintiff's age discrimination claim.

Plaintiff has also failed to come forward with competent evidence to create a genuine issue of material fact on his claims of discrimination based on his race, color, and religion.[9]  Defendant has introduced evidence that after plaintiff was terminated, TWC hired an African-American female, Tamiko Coleman, as plaintiff's replacement.  (Doc. 30-1, Andrews Decl., ¶ 23).  Plaintiff does not dispute that the position he lost was filled by an African-American female, and neither has plaintiff introduced any evidence as to the religious affiliation of his replacement.  In addition, plaintiff has not introduced any evidence to show that he was treated

---

[8] Even if plaintiff's unsworn questionnaire and unsigned EEOC charge could be construed together as a valid charge for exhaustion purposes, neither document refers to discrimination on account of plaintiff's age and the age discrimination box on the EEOC charge completed by the EEOC is not checked.  (Doc. 30-15, Carr Decl., Exh. 2, pp. 14-15, 20-23).  Thus, plaintiff did not exhaust his administrative remedies as to the age discrimination claim for this additional reason.

[9]Defendant alleges that in determining whether plaintiff can establish a prima facie case of discrimination, the Court is limited to considering whether actions taken prior to plaintiff's July 2014 termination constituted adverse employment actions because the complaint alleges plaintiff was given "certain jobs which made [him] sick."  (Doc. 30 at 17, n.6, citing Doc. 4 at 3).  The Court disagrees and finds that construing the complaint in this manner would be inconsistent with the requirement that pro se filings be liberally construed. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007).  In any event, defendant assumes that plaintiff challenges his termination as the adverse employment action and argues that such claim fails on the merits.  (*Id.*).

less favorably than any individuals outside the protected classes with respect to his race, color, or religion. Plaintiff alleges that, "There is only documented evidence that the Plaintiff was required to do more than all other employees. . . ." (Doc. 33 at 6). However, plaintiff has not introduced any documentation to support his allegation.[10] Plaintiff's generalized conclusion, made without any reference to documentary evidence, is not sufficient to permit an inference that defendant treated him less favorably than other employees outside the protected classes. *See Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ("[T]he party opposing [a motion for summary judgment] . . . must make an affirmative showing with proper evidence in order to defeat the motion." (internal quotation marks omitted). Plaintiff therefore has not satisfied the fourth prong of his prima facie case for his claims of discrimination based on his color, race, and religion.

Even assuming plaintiff could establish a prima facie case of discrimination based on his race, color or religion, defendant has articulated a legitimate, nondiscriminatory reason for plaintiff's discharge. Defendant asserts that it terminated plaintiff because he violated Major Work Rule # 30. (Doc. 30-1, Andrews Decl. ¶ 21; Exh. J). Plaintiff has not introduced evidence that creates an issue as to whether the reason defendant has articulated as the basis for his discharge is pretextual. Plaintiff alleges in his response to the summary judgment motion that he complied with Major Work Rule # 30 by reporting the April 2014 traffic violation and summons. (Doc. 33 at 3). He further alleges that his "requirements" had changed multiple times due to promotions he had received, and he contends that the Retail Sales Representative position did not require him to drive. (*Id*. at 3-4). Plaintiff further speculates that if he had not disclosed his criminal history during the first "2.75 years of his employment" when he did not report to

---

[10] Plaintiff has attached several documents to his opposing memorandum. (Doc. 33 at 9-27). However, the documents do not show there is a genuine issue of material fact as to any of plaintiff's claims.

Andrews, Murray or Stuckey, he would not have been offered the position of Retail Sales Representative. (*Id*. at 4). Plaintiff also contends that he was a "stellar employee" with a clean work history, and he denies that he was insubordinate. (*Id*. at 5-6). Plaintiff's vague allegations, without any reference to affidavits or documentary evidence to support them, fall far short of satisfying plaintiff's burden to come forward with evidence establishing a material issue of fact as to whether the reason proffered by defendant for his termination is pretextual. *See Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) ("[T]he party opposing [a motion for summary judgment] . . . must make an affirmative showing with proper evidence in order to defeat the motion.") (internal quotation marks omitted). Defendant has submitted affidavits and documentary evidence to show that plaintiff's position required a "[v]alid driver's license and a clean driving record" (Doc. 30-1, Andrews Decl., ¶ 3, Exh. A); that the Final Written Warning issued to plaintiff in August 2013 cited several prior instances of "unacceptable" and "unprofessional" behavior that were a "direct violation of . . . TWC Standards of Business Conduct" (*Id*., Exh. C); and that plaintiff failed to report his traffic violations as required by TWC Major Work Rule #30 (*Id*., ¶ 16; Exh. H). Plaintiff's response in opposition to defendant's motion for summary judgment does not call this evidence into question and fails to satisfy his burden to establish a material issue of fact for resolution by the fact-finder as to whether he was discharged for violating Major Work Rule #30. *Anderson*, 477 U.S. at 252.

Insofar as plaintiff alleges he was the victim of sex discrimination, his claim appears to be premised on the allegation in his EEOC charge that he "witnessed sexually based jokes and conversations on a daily basis from a coworker," which he had complained about to no avail. (Doc. 4 at 7-8). Plaintiff's claim is therefore properly construed as a sexual harassment claim. Title VII prohibits "the creation of a hostile work environment" on the basis of an employee's

gender. *Eisenbaum v. Senior Lifestyle Corp.*, 560 F. App'x 496, 499 (6th Cir. 2014) (quoting *Vance v. Ball State Univ.,* --U.S. --, 133 S.Ct. 2434, 2441 (2013)).  To prevail on a hostile work environment claim based on gender harassment, plaintiff must establish that (1) he is a member of a protected class, (2) he was subjected to unwelcome harassment, (3) the harassment was based on his gender, (4) the harassment had the effect of unreasonably interfering with his work performance by creating a hostile, offensive, or intimidating work environment, and (5) the defendant knew or should have known about the harassment and failed to act.  *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011); *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).

Although plaintiff made an allegation of sexual harassment in his EEOC charge and a generalized claim of sex discrimination in the complaint, the complaint includes no allegations related to sexual harassment.  Plaintiff alleges only that he was discriminated against by management "for . . . gender[.]"  (Doc. 4 at 3).  Plaintiff claims that he was harassed "mentally [and] physical[ly]," but he alleges the harassment resulted from "bringing tax, fraud, extortion [and] identity theft issues to management's attention."  (*Id.*).  Plaintiff does not make any allegations about harassment pertaining to his gender.  Nor has plaintiff produced any evidence in response to defendant's summary judgment motion to show he has an actionable sexual harassment claim.  There is no evidence in the record to substantiate a claim that plaintiff was harassed by co-workers or supervisors based on his gender or that such harassment had the effect of unreasonably interfering with his work performance by creating a hostile work environment. For these reasons, plaintiff cannot prevail on his sex discrimination claim and defendant is entitled to summary judgment on the claim.

**B. Plaintiff's retaliation claim**

Title VII prohibits an employer from retaliating against an employee because he opposed unlawful discrimination or because he "made a charge . . . or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, -- U.S. --, 133 S.Ct. 2517, 2522 (2013).  To establish a prima facie case of retaliation under Title VII, plaintiff must show that (1) he engaged in activity protected under Title VII; (2) his employer knew of the exercise of the protected activity; (3) he was subjected to an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.  *Hamilton v. Gen. Elec. Co*., 556 F.3d 428, 435 (6th Cir. 2009) (citing *Niswander v. Cincinnati Ins. Co*., 529 F.3d 714, 720 (6th Cir. 2008)).  If plaintiff establishes a prima facie case of retaliation, the burden of production shifts to defendant to "articulate some legitimate, non-discriminatory reason" for its actions.  *Id*.  If defendant satisfies its burden, plaintiff bears the burden of demonstrating that the proffered reason was pretextual.  *Id*.  A plaintiff asserting a retaliation claim under § 2000e-3(a) must establish that his protected activity was a but-for cause of the alleged adverse action by the employer.  *Nassar*, 133 S.Ct. at 2528.  That is, the plaintiff must show that "[t]he unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  *Id*. at 2533.  The practice about which the individual complains need not ultimately be found to be unlawful; it is only necessary that the plaintiff have a "reasonable and good faith belief" that the challenged conduct violated Title VII.  *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 579-80 (6th Cir. 2000) (citing *EEOC Compliance Manual*, (CCH) ¶ 8006)).

Defendant argues that plaintiff cannot establish a prima facie case of retaliation.  (Doc. 30 at 20-23).  Defendant contends that Title VII does not protect participation in an internal

investigation; instead, the investigation must take place pursuant to a pending EEOC charge. (*Id.*, citing *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542-43 (6th Cir. 2003)). Defendant therefore alleges that to the extent plaintiff's retaliation claim is premised on his complaints to TWC management and TWC Employee Relations about the August 2013 workplace incident with Fehr, the first prong is not satisfied. To the extent plaintiff seeks to rely on his submission of the EEOC questionnaire as the protected activity, defendant alleges that plaintiff's claim must fail because he cannot show a causal connection between that activity and the adverse employment action, i.e., his termination. Defendant alleges that its investigation into plaintiff's violation of TWC Major Work Rule #30 began before it had notice of plaintiff's EEOC submission, such that the temporal proximity between plaintiff's protected activity and his termination is insufficient to support an inference of a causal connection between the two events. (*Id.* at 22-23). Finally, defendant contends it has asserted a legitimate, nonretaliatory reason for plaintiff's termination – his violation of Major Work Rule #30 – and plaintiff has not produced any evidence to rebut the proffered reason and show it was not the real reason for his termination. (*Id.* at 23).

Initially, the Court rejects defendant's argument that internal complaints to management are insufficient to invoke the protections of Title VII's anti-retaliation provision when those complaints are unrelated to a pending EEOC charge. Section 2000e-3(a) prohibits retaliation against an employee who has "opposed" any practice by the employer made unlawful under Title VII (the "opposition clause") or against an employee who has "participated" in any manner in an investigation under Title VII (the "participation clause"). *Johnson*, 215 F.3d at 578 (citations omitted). Examples of "opposing" conduct that may be protected by Title VII include "complaining to anyone (management [or] other employees. . .) about allegedly unlawful

practices," although the manner of opposition must be "reasonable."  *Id*. at 579 (citing *EEOC Compliance Manual*, (CCH) ¶ 8006).  Thus, insofar as plaintiff made internal complaints to TWC management or Human Resources about employment practices or conduct that he reasonably and in good faith believed violated Title VII, his complaints are sufficient to satisfy the first prong of his prima facie retaliation claim.

The basis of plaintiff's retaliation claim is not clear from the complaint.  Plaintiff generally alleges that he was retaliated against, but he does not present any allegations to support a claim that he was retaliated against because he opposed unlawful discrimination or because he made a charge or participated in a proceeding under Title VII.  Plaintiff alleges only that he was harassed by defendant for "bringing tax, fraud, extortion [and] identity theft issues to management's attention."  (Doc. 4 at 3).  These allegations do not demonstrate that plaintiff engaged in activity protected under Title VII and therefore cannot support a retaliation claim under 42 U.S.C. § 2000e-3(a).

Plaintiff alleges in the unsigned EEOC charge attached to the complaint that he was retaliated against after he "voiced [his] opposition" to an offensive remark Fehr made about his religion and/or race in late July/early August 2013.  (Doc. 4 at 7).  The charge states that Fehr purportedly stated that plaintiff could not be Jewish because he is African-American and that Fehr treated plaintiff differently and held him to different standards after he opposed the remark.  (*Id*.).  Plaintiff's allegations cannot support a retaliation claim against TWC.  Plaintiff did not have an objectively reasonable basis to believe that the single remark he attributes to Fehr constituted unlawful harassment based on his race or religion.  *See Younis,* 610 F.3d at 362 (a plaintiff must present evidence of harassment that "unreasonably interfer[es] with [his] work performance and creat[es] an objectively intimidating, hostile, or offensive work environment"

to establish a hostile work environment).  Further, even assuming plaintiff reasonably believed that Fehr's remark constituted unlawful discrimination, plaintiff has not produced any evidence showing he "opposed" the remark.  Specifically, plaintiff has not submitted any evidence to show that he complained to Fehr or to any other employee at TWC about the remark or that anyone at TWC was aware of the alleged remark prior to May 2014, when TWC received notice of plaintiff's EEOC complaint.[11]  (Doc. 30-1, Andrews Decl., Exh. K).  Thus, plaintiff cannot satisfy the first and second prongs of a retaliation claim based on Fehr's purported comment regarding his religion and race.

In addition, there is no evidence of a causal connection between Fehr's purported remark and the subsequent retaliatory actions plaintiff alleges.  Plaintiff alleged in the EEOC charge that Fehr had retaliated against him in a number of ways, but he alleged the retaliation stemmed from his complaint to Murray and Stuckey about an incident involving Fehr during which she allegedly threatened plaintiff with physical violence.[12]  (Doc. 4 at 7).  Plaintiff confirmed to Urchek during her investigation of his complaint to TWC that the retaliatory actions he alleged – i.e., allegations that Fehr refused to train him on new procedures, constantly changed his schedule without prior notice, talked disparagingly about plaintiff within earshot of his customers, and denied his vacation requests – had occurred after he reported the August 2013 incident with Fehr during which she allegedly threatened plaintiff with violence and not when Fehr allegedly made the statement concerning African-Americans and the Jewish faith.  (Doc.

---

[11] As indicated earlier, TWC's records indicate that plaintiff complained to Human Resources prior to May 2014 that Fehr was discriminating against him because she had "overheard" plaintiff talking to his wife about "what church to go to."  (Doc. 30-1, Andrews Decl., Exh. F).  However, plaintiff admitted when questioned about the incident that he did not know whether Fehr had actually overheard his conversation, and she had not made any comments that led plaintiff to believe she was discriminating against him.  (*Id.*).  Further, this incident has no apparent connection to the incident described in the EEOC complaint.

[12] Plaintiff alleged that the incident occurred in October 2013, but TWC documentation shows the incident occurred in August of 2013.  (*See* Doc. 30-1, Andrews Decl., Exhs . B, C, F).

30-1, Andrews Decl., Exhs. D, E).  Accordingly, plaintiff cannot establish the fourth prong of a prima facie case of retaliation based on his alleged opposition to a discriminatory remark Fehr purportedly made in the summer of 2013.

Finally, plaintiff has not produced evidence to support an inference of retaliation based on his EEOC filings and his termination.  The first three prongs of a prima facie case are arguably satisfied with regard to plaintiff's termination.  Plaintiff completed an EEOC questionnaire on April 4, 2014 (Doc. 30-15, Carr Decl., Exh. 2, pp. 20-23), and the EEOC drafted a charge on plaintiff's behalf on April 7, 2014.  (*Id*., pp. 14-15).[13]  TWC was aware of plaintiff's complaint to the EEOC on or about May 7, 2014, when the EEOC sent TWC the charge it had drafted on plaintiff's behalf.  (Doc. 30-1, Andrews Decl., Exh. K).  TWC took an adverse employment action against plaintiff when it terminated his employment on July 11, 2014.

However, there is insufficient evidence of a causal connection between plaintiff's protected activity and the adverse job action so as to establish a prima facie case of retaliation.  The only evidence of a causal connection between plaintiff's complaint to the EEOC and his termination is the temporal proximity between the two events.  *See Mickey*, 516 F.3d at 525 ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.  But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.").  Here, approximately two months

---

[13] Plaintiff also filed a complaint with TWC Employee Relations in April 2014 alleging unlawful retaliation by Fehr. (Doc. 30-1, Andrews Decl., ¶ 11; Exh. F- "Nadel Confidential Detailed Investigation Summary" noting complaint was received as a TWC referral on April 7, 2014).

elapsed between the date defendant learned of plaintiff's EEOC filing and the date of plaintiff's

termination. During the intervening time period, TWC investigated plaintiff's driving record

based on a public records search it first performed on April 3, 2014 – the day before plaintiff

contacted the EEOC – following plaintiff's report that he had been detained by the police and

had received a summons to appear in court. (Doc. 30-1, Andrews Decl., ¶¶ 15, 16). TWC

learned that plaintiff had received several moving violations between August 2012 and October

2013 that he had failed to report. (*Id.*, ¶ 16). TWC also learned that plaintiff had failed to appear

in court on the summons he had reported and that a warrant had been issued. (*Id.*, ¶ 19). Thus,

defendant first became aware during the intervening period that plaintiff had violated Major

Work Rule #30, which requires an employee to report convictions for traffic violations. (*Id.*,

Exh. H). In light of these circumstances, temporal proximity alone is insufficient to establish a

causal connection between plaintiff's protected activity and his termination.

Finally, even if plaintiff could establish a prima facie case of retaliation, defendant has

asserted a legitimate, nonretaliatory reason for plaintiff's termination – his violation of Major

Work Rule #30 – and plaintiff has not produced any evidence to show that this was not the real

reason for his termination. For the reasons discussed earlier, plaintiff's opposing memorandum

does not call into question whether he failed to report traffic violations as alleged by defendant

and falls far short of satisfying plaintiff's burden to come forward with evidence establishing a

material issue of fact for resolution by the fact-finder on his Title VII retaliation claim.

*Anderson*, 477 U.S. at 252. Defendant is therefore entitled to summary judgment in its favor on

plaintiff's retaliation claim.

## VII.  Conclusion

Plaintiff failed to timely exhaust his administrative remedies as required in order to pursue his Title VII and ADEA claims in this Court.  Even assuming plaintiff had fully exhausted his administrative remedies, he has failed to produce sufficient evidence to create a genuine issue of material fact on the merits of his claims.  Defendant is therefore entitled to summary judgment on all claims.[14]

### IT IS THEREFORE ORDERED THAT:

1.  Defendant's motion for summary judgment (Doc. 30) is **GRANTED**.  Judgment is granted in favor of defendant on all claims and this case is **TERMINATED** on the docket of the Court.

2.  The Court certifies pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of this Order would not be taken in good faith and therefore denies plaintiff leave to appeal *in forma pauperis*.  Plaintiff remains free to apply to proceed *in forma pauperis* in the Court of Appeals.  *See Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999), overruling in part *Floyd v. United States Postal Serv.,* 105 F.3d 274, 277 (6th Cir. 1997).

Date: 9/28/16

Karen L. Litkovitz
United States Magistrate Judge

---

[14] In light of the Court's disposition of plaintiff's claims on administrative exhaustion grounds and the merits, the Court need not address whether plaintiff is judicially estopped from pursuing his claims by failing to disclose his claim against TWC in his bankruptcy proceedings.